UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Sebastian Lucido,

    Plaintiff,

v.                                                                                  Case No. 08-15269

Robert S. Mueler III, in his official                    Honorable Sean F. Cox
capacity as Director of the Federal
Bureau of Investigation, *et al.*,

    Defendants.
_____/

## OPINION & ORDER
## GRANTING DEFENDANTS' MOTIONS TO DISMISS

This matter is currently before the Court on a Motion to Dismiss filed by the Government Defendants and a Motion to Dismiss filed by the FINRA Defendants. The parties have briefed the issues and oral argument was heard on September 17, 2009. For the reasons that follow, the Court shall GRANT both motions.

BACKGROUND

Plaintiff Sebastian Lucido ("Lucido") is currently employed in the financial services industry and is subject to the rules and regulations of the Securities and Exchange Commission and the Financial Industry Regulatory Authority ("FINRA"). (Am. Compl. at ¶ 13).

Lucido was previously indicted in two separate criminal actions in the United States District Court for the Eastern District of Michigan.

<u>Criminal Case No. 92-80152:</u>

In Criminal Case No. 92-80152, Lucido was indicted on charges of Structuring

Transactions to Evade Reporting Requirements and Aiding and Abetting. The case was assigned to the Honorable Nancy G. Edmunds. Judge Edmunds ultimately dismissed the case by entering a Judgment of Acquittal.

      Criminal Case No. 93-81310:

In Criminal Case No. 93-81310, Lucido was indicted on seven counts of financial-based offenses. The case was assigned to the Honorable George La Plata. The case was tried to a jury and the jury entered a verdict of not guilty on March 1, 1994.

      Lucido Files This Action And Petitions For Expungement In The Prior Criminal Actions:

Lucido filed this action on December 24, 2008, seeking expungement and asserting claims against Robert S. Mueller III, in his personal and official capacities as Director of the Federal Bureau of Investigation ("FBI"), and claims against the Financial Industry Regulatory Authority[1] ("FINRA").

On the same date, December 24, 2008, Lucido filed a Motion for Expungement in Case No. 92-80152, wherein he requested that Judge Edmunds expunge his criminal record in that matter. Judge Edmunds issued a written Order denying that motion on March 19, 2009. (*See* Docket Entry No. 472 in Case No. 92-80152). Her Order explained that "[e]xpungement is a rare form of relief, ordered in very few cases" and that the "rationale for refusing to expunge arrest or indictment records is that an arrest or indictment has independent legal significance, insofar as it shows the existence of probable cause to believe that a defendant committed a crime, even when the Government ultimately fails to prove guilt." (*Id*. at 4). The Order further stated:

---

[1] FINRA was formerly known as National Association of Securities Dealers, Inc. ("NASD"), but on July 30, 2007, changed its name.

> [Lucido] has not shown that his circumstances warrant the relief sought. He was the subject of a valid arrest and indictment and was subsequently tried. The Government has not conceded his innocence, nor is there any question of the validity of the indictments that he seeks to expunge. Those records continue to bear independent legal significance.

(*Id*. at 5). Lucido is currently appealing that Order.

On December 24, 2008, Lucido also filed a Motion for Expungement in Case No. 93-81310, wherein he requested that the Honorable Paul Borman[2] expunge his criminal record in that matter. Judge Borman issued an Order denying that motion on March 26, 2009. (*See* Docket Entry No. 333 in Case No. 93-81310). Lucido is currently appealing that Order.

The Pending Motions To Dismiss:

On April 13, 2009, FINRA filed a Motion to Dismiss, pursuant to FED. R. CIV. P. 12(b)(6), seeking dismissal of all claims asserted against it.

On April 13, 2009, Defendant Mueller also filed a Motion to Dismiss, pursuant to FED. R. CIV. P. (b)(1) and (6), seeking dismissal of all claims asserted against him.

Lucido's Amended Complaint:

After the Motions to Dismiss had been filed, Lucido filed an unopposed motion seeking leave to file an Amended Complaint. The Court granted the motion in an Order issued on June 30, 2009. (Docket Entry No. 36). This Court ordered that Lucido file his Amended Complaint within seven (7) days of the date of the order (July 7, 2009). Because the Motions to Dismiss had been fully briefed before Lucido sought to amend his complaint, the Court's order also directed each of the parties to file a brief of no more than 5 pages, setting forth each party's

---

[2]Case No. 93-81310 was reassigned to Judge Borman following Judge La Plata's retirement.

3

respective position as to the impact of the amended complaint on the pending Motions to Dismiss within fourteen (14) days of the date of the order (July 14, 2009). The Government and FINRA each filed a timely supplemental brief in compliance with the Order.

Lucido filed his "First Amended Complaint for Declaratory Judgment and Other Relief and Jury Demand" on July 10, 2009.

Lucido's amended complaint names the following Defendants: 1) Robert S. Mueller III, in his official[3] capacity as Director of the F.B.I.; 2) the United States of America, through and by the FBI and FINRA; 3) unknown agents of FINRA; and 4) FINRA. He asserts the following seven counts:

- "Permanent Injunction" (Count I): wherein Lucido asks this Court to expunge his criminal record in both of his former criminal cases and "order Defendants to expunge any record of Plaintiff's arrest or indictment," enjoin the FBI from disclosing Plaintiff's criminal record, and "enjoin FINRA from promulgating the fact of Plaintiff's arrest."

- "Violation of the Right to Privacy Given by the First, Fourth, and Fifth Amendments to the United States Constitution" (Count II): wherein Lucido alleges that the FBI violated his right to privacy by disclosing his record to FINRA, and that FINRA. also violated his right to privacy by publicly disclosing his arrest record, and that those violations have acted to deny him his constitutional "right to a fair trial."

- "Violation of Substantive and Procedural Due Process" (Count III): wherein Lucido alleges that Mueller and FINRA have deprived him of due process of law in violation of the Fifth and/or Fourteenth Amendments.

- "The FBI's Disclosure of Lucido's Arrest Record to FINRA Violates 5 U.S.C. § 552a(b)" ("Count IV – As to Defendants Mueller and the FBI"): wherein Lucido alleges that the FBI's disclosure of his record to FINRA violates 5 U.S.C. § 552a(b).

- "FINRA's Public Disclosure of Lucido's Arrest Record Violates 5 U.S.C. § 552a(b)"

---

[3]Lucido's original complaint asserted claims against Defendant Mueller in his personal and official capacities. Lucido later agreed to dismiss any claims made against him in his individual capacity. (*See* Docket Entry No. 18 at 2 n.1). Consistent with that agreement, Lucido's amended complaint asserts only official capacity claims against Defendant Mueller.

("Count V - As to FINRA"): wherein Lucido alleges that FINRA's public disclosure of his record violates the same statute.

- "Defendants' Public Disclosure of Lucido's Arrest Record Violates Michigan Law" (Count VI): wherein Lucido alleges that "Michigan law prohibits the public disclosure of embarrassing private facts," and that Defendants' public disclosure of his record violates Michigan law. He further alleges that he "has the ability to bring this state law claim against Defendants by operation of the Federal Tort Claims Act, and has sufficiently satisfied all exhaustion requirements."

- "Declaratory Judgment" (Count VII): wherein Lucido seeks, under the Declaratory Judgment Act, a declaration that Defendants' "disclosure of his Record was in violation of his rights under the Constitution and laws of the United States."

With the exception of Count VI, the relief sought with respect to each of the above counts is for the Court to order Defendants to expunge any record of Lucido's arrest or indictment and to enjoin them from disclosing his record. The relief sought with respect to Count VI is an award of "damages to be proven at trial in excess of $75,000," along with an award of attorney fees and costs and "such other and further general relief as the Court finds just and equitable." (Pl.'s Am. Compl. at 17).

With the exception of Counts IV (asserted against the Government Defendants only) and Count V (asserted against the FINRA Defendants only), Lucido asserts his claims against all Defendants.

ANALYSIS

A.  Lucido's Constitutional Claims (Counts II and III):

The Government asserts that Lucido's constitutional claims fail to state a claim because, under *Cline v. Rogers*, 87 F.3d 176 (6th Cir. 1996), an individual does not have any constitutional right to privacy in his criminal records. Because no such right exists, it asserts that Count II fails to state a claim.

5

The Government also asserts that because no such right exists, his claim for violation of substantive due process in Count III fails as a matter of law. In addition, it notes that a procedural due process claim can only be brought if there has been a deprivation of a recognized life, liberty, or property interest. It asserts that because an individual has no constitutional right to privacy in his criminal record, Lucido's procedural due process claim in Count III also fails.

In response, Lucido acknowledges that the proposition that there is never a constitutional right to privacy in a criminal record is "generally true." (Pl.'s Resp. at 6). Lucido nevertheless asserts that *Paul v. Davis*, 424 U.S. 693 (1976) "leaves open the idea that if, by its invasion of his privacy, the Government denied him a right to liberty or property (or another freedom under the Bill of Rights) that it otherwise guaranteed, a constitutional privacy claim is not foreclosed." (Pl.'s Resp. at 7). He asserts that he has stated a cognizable claim because the Government's invasion of his privacy both deprived him of procedural and substantive due process and denied him "his right to a fair trial."

This Court shall GRANT the Government's Motion to Dismiss as to the constitutional claims asserted against the Government Defendants. In *Cline*, the Sixth Circuit affirmed a district court's dismissal, under FED. R. CIV. P. 12(b)(6), of an individual's constitutional claims based upon the disclosure of his criminal record. In doing so, the Sixth Circuit held that "[t]here is no violation of the United States Constitution in this case because there is no constitutional right to privacy in one's criminal record." *Cline,* 87 F.3d at 179. "[A]rrest and conviction information are matters of public record." *Id.*

Accordingly, Count II, which alleges that Defendant Mueller violated Lucido's right to privacy by disclosing his criminal record, fails to state a cognizable claim. His claim for

6

violation of substantive due process in Count III fails on the same basis.

Lucido's procedural due process claim, in Count III, must also be dismissed. To proceed with a due process claim, a plaintiff must first show a protected life, liberty or property interest. Only after meeting that requirement can the plaintiff proceed by showing that such interest was "abridged without appropriate process." *Ferenca v. Hairston*, 199 F.3d 1244, 1247 (6th Cir. 1997). Under *Cline,* Lucido has no right to privacy of his criminal record. Lucido has submitted no authority to support his assertion that the Government's disclosure of his criminal record could somehow be construed as depriving him of his "right to a fair trial." His trial already occurred and he was not convicted. The arrest and indictment information being disclosed is true and accurate, indicating that Lucido was arrested and indicted, but was not convicted of any crimes.

Thus, the Court shall dismiss all constitutional claims against the Government for failure to state a claim.

In its Motion to Dismiss, FINRA also asks the Court to dismiss the constitutional claims against it. It asserts that Lucido's constitutional claims against it (Counts II and III) must be dismissed because it is not a "state actor." It notes that:

> Courts have held without exception that "[t]he NASD is a private actor, not a state actor." *Desiderios*, 191 F.3d at 206; *see also Perpetual Sec., Inc. v. Tang*, 290 F.3d 132, 138 (2d Cir. 2002)("It is clear that NASD is not a state actor"); *D.L. Cromwell, Inc.*, 279 F.3d at 162 ("It has been found, repeatedly, the NASD itself is not a government functionary"); *Dobbins v. NASD*, 2007 U.S. Dist. LEXIS 61767, *9 (N.D. Ohio Aug. 22, 2007) ("The absence of state action requires dismissal of the constitutional claims [against NASD]"); *Scher v. NASD*, 286 F.Supp.2d 402, 407 (S.D. N.Y. 2005) . . . . *Graman v. NASD*, 1998 U.S. Dist. LEXIS 11624, *9 (D.D.C. Apr. 27, 1998) ("Every court that has considered the question has concluded that NASD is not a governmental actor.") . . .

(FINRA's Br. at 9).

In response, Lucido does not dispute that he must establish that FINRA is a "state actor" in order to assert his constitutional claims against it. Rather, Lucido asserts that the Court cannot determine whether or not FINRA is a state actor at this "pre-discovery stage of the litigation." In response to the considerable authority that FINRA has submitted to establish that it is a private actor, not a state actor, Lucido has not identified a single case wherein any court has found FINRA to be a state actor.[4]

Moreover, this Court need not determine whether or not FINRA is a "state actor" in order to dismiss the constitutional claims against it. Assuming *arguendo* that it was a state actor for purposes of the constitutional claims, those claims would nevertheless fail to state a viable claim against FINRA for the same reasons that they fail to state a viable claim against the Government Defendants.

Accordingly, the Court shall dismiss Counts II & III against all Defendants.

B.    Lucido's Privacy Act Claims (Counts IV and V):

"Congress enacted the Privacy Act, 5 U.S.C. § 552a, in order to protect the privacy of personal and financial data maintained in federal information systems." *Kimberlin v. U.S.*, 788 F.2d 434, 436 (6th Cir. 1986). The Privacy Act is part of the Administrative Procedures Act, 5 U.S.C. § 551 *et seq*. ("the APA").

In Count IV, Lucido asserts that the F.B.I.'s disclosure of his arrest record to FINRA violates 5 U.S.C. § 552a(b) of the Privacy Act.

In Count V, Lucido asserts that FINRA's disclosure of his arrest record violates § 552a(b)

---

[4]Nor has he identified any discovery that he has sought on this issue.

of the Privacy Act.

    1.    <u>Does The FBI's Disclosure To FINRA Come Within The "Routine Use" Exception To The Statute?</u>

The Government contends that Count IV must be dismissed because the FBI's disclosure to FINRA comes within the "routine use" exception to the statute.

Section 552a pertains to records maintained on individuals and provides, in pertinent part:

> (b) Conditions of disclosure.– No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, unless disclosure of the record would be –
> . . . .
>     (3) for a routine use as defined in subsection (a)(7) of this section and described under subsection (e)(4)(D) of this section;

The statute define the term "routine use," with respect to the disclosure of a record, as "the use of such record for a purpose which is compatible with the purpose for which it was collected." 5 U.S.C. § 552a(a)(7).  In order to invoke this exception, the disclosing agency must publish, "in the Federal Register," a notice describing the routine use.  Section 552a(e)(4)(D).

The Government contends that the F.B.I. has met: 1) the necessary publication requirement under § 552a(e)(4)(D); and 2) the compatibility requirement under § 552a(a)(7). With respect to the publication requirement, the Governments states:

> The Department of Justice has published notice of the FBI's "routine uses" for its systems of records, which includes the [National Crime Information Center] system.  *See* 66 Fed. Reg. 33558, 2001 WL 697675 (June 22, 2001); 70 Fed. Reg. 07513, 2005 WL 331158 (February 13, 2005).  One routine use for systems records disclosure is 'to such recipients and under such circumstances and procedures as are mandated by Federal statute or treaty." 66 Fed. Reg. 33558, Blanket Routine Use 6.  This routine use applies to the FBI's disclosure of Lucido's records to FINRA because the disclosure is required by federal law.  *See* 15 U.S.C. § 78q(f)(2) and (3)(A)(requiring members of national securities

> exchanges to submit fingerprint cards to obtain NCIC records); see also 28 C.F.R. § 20.33(a)(3) and § 50.12 (requiring the FBI to disseminate NCIC information to segments of the securities industry).

(Gov't's Br. at 7).

The Government further asserts that the compatibility requirement is also met by the FBI, stating:

> The Department of Justice is permitted, in fact required, to collect and maintain criminal record information, not only for law enforcement purposes, but also '[f]or use in connection with licensing or employment' and 'for other uses for which dissemination is authorized by federal law.' 20 C.F.R. § 20.33(a)(3). The disclosure of information to FINRA, pursuant to statutory mandate, is therefore compatible with one of the purposes for which the information is collected by the FBI and, as such, fits within the 'routine use' exception.

(Gov't's Br. at 7).

In response, Lucido claims that this is "a question that this Court cannot decide on the pleadings." (Pl.'s Br. at 9). Lucido then asserts that because FINRA is not a governmental agency, any disclosure to FINRA violates 28 U.S.C. § 534(b).

As the Government notes, however, 28 U.S.C. § 534(b) provides only that "[t]he exchange of records and information *authorized by subsection (a)(4) of this section* is subject to cancellation if dissemination is made outside the receiving departments or related agencies." (Emphasis added). "Thus, only when the FBI disseminates information pursuant to § 534(a)(4) can it have that authorization cancelled by § 534(b)." (Gov't's Br. at 2). Here, the Government has never argued that the FBI is authorized to disseminate the information at issue pursuant to § 534(a)(4).

Accordingly, the Court shall dismiss the Privacy Act claim against the Governmental Defendants because the routine use exception applies.

2. <u>Does 5 U.S.C. § 552a Apply To FINRA?</u>

The parties agree that in order for Lucido to proceed with a Privacy Act claim against FINRA under the APA, he must establish that FINRA is an "agency" for purposes of the Act. The Privacy Act states that the "term 'agency' means agency as defined in section 552(e) of this Title," which the parties agree "includes any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency."

In its Motion, FINRA contends that Lucido cannot maintain a civil action against it under the Privacy Act. It contends that "[b]oth courts and the SEC have determined" that the Act does not apply to self-regulatory organizations such as FINRA "because FINRA is not a governmental agency within the meaning of that statute. *See Matter of Frank L. Palumbo*, 52 S.E.C. 467, 475 (1995) ("We have repeatedly noted that the [APA] does not apply to self-regulatory agencies such as the NASD[5]"); *see also Matter of Sumner Cotzin*, 45 S.E.C. 575, 578 (1974) )"the NASD is not a federal agency subject to the APA's strictures"); *Shultz v. SEC*, 614 F.2d 561, 569 (7th Cir. 1980) (court found that Chicago Board Options Exchange was a Delaware non-stock corporation and "not an authority of the Government" and thus determined that the [APA] did not apply to the Exchange.)" (FINRA's Br. at 9-10).

Both parties acknowledge that the term "agency" has the same definition for purposes of both the Privacy Act and the Freedom of Information Act. FINRA asserts that "[j]ust as it has been determined that the [APA] does not apply to FINRA, so too has it been held that FOIA does

---

[5]FINRA was formerly known as NASD.

11

not apply to FINRA or other [self-regulatory organizations]. *See Gates v. NASD*, No. LR-C94-71 (E.D. Ark. April 1, 1994) (dismissing FOIA claim against NASD and finding that FOIA did not apply to NASD); *Independent Investor Protective League v. New York Stock Exchange*, 367 F.Supp. 1376, 1377 (S.D. N.Y. 1973) (court found that [FOIA] only applies to federal agencies, and that the 'Exchange is not such an authority; it is a not-for-profit corporation of the State of New York.')" (FINRA's Br. at 10).

In response, Lucido contends that "[t]here is no binding authority holding that the statute is inapplicable to FINRA, and no reason to rely upon the minimal authority and self-serving SEC decisions that does reference." (Pl.'s Br. at 10-11). Lucido has not presented, however, any authority to establish that he can pursue a claim against FINRA under the Privacy Act. At the September 17, 2009 hearing, Plaintiff's counsel acknowledged that he has been unable to find a single decision wherein any court has found FINRA to be an "agency" for purposes of the Privacy Act, the Administrative Procedures Act, or the Freedom of Information Act.

The Court shall dismiss the Privacy Act claim against FINRA because FINRA is not "agency" for purposes of the Act.

3. <u>Are Lucido's Claims Barred By FINRA's Absolute Regulatory Immunity And By The Absence Of A Private Right Of Action Against FINRA For Its Regulatory Acts?</u>

As an additional ground for dismissal, FINRA also asserts that it has absolute regulatory immunity for it actions in making the information available through BrokerCheck. FINRA contends that it is required, under Rule 8312(b)(1), to report Lucido's Indictment history to the public via BrokerCheck. (*See* Rule 8312, attached as Tab C to FINRA's Brief; *see also Meyers v. U.S.*, 1996 U.S. Dist. LEXIS 6044 at *4 (E.D. Mich. 1996)(noting that the Securities Exchange

Act requires FINRA to make certain information to the general public). FINRA contends that because its maintenance and reporting of the information in BrokerCheck falls squarely within it regulatory duties, it is entitled to absolute immunity "from liability for claims arising out of the discharge of its duties under the Exchange Act." *D'Allessio v. NYSE, Inc.*, 258 F.3d 93, 105 (2d Cir. 2001). FINRA's motion also provides numerous other cases in support of its position on regulatory immunity. (*See* FINRA's Br. at 10-13).

In response, Lucido contends that courts "applying governmental immunity to purportedly private entities like FINRA" have been careful to do so only when the contributions of immunity to effective government outweigh the harm to individuals. (Pl.'s Resp. at 15). Lucido asserts that FINRA cannot "make a showing that it is acting within the scope of its regulatory authority to disseminate the arrest information when no regulation authorizes or requires it to do so." (*Id*. at 16). The Court finds this assertion without merit, as FINRA has shown that it is required to do so by Rule 8312.

The Court concludes that Lucido cannot pursue such a claim against FINRA under the Privacy Act or APA.

    C.    <u>Lucido's Claims Under The Federal Tort Claims Act (Count VI):</u>

In its Motion to Dismiss, the Government asserted that Lucido's state law claims (asserted in Count VI) must be dismissed because there has been no waiver of sovereign immunity with respect to these claims.

In response, Lucido asserted that the Federal Tort Claims Act "grants the federal district courts jurisdiction over a certain category of claims for which the United States has waived sovereign immunity." (Pl.'s Resp. Br. at 11). Given that his original complaint made no

13

reference to the Federal Tort Claims Act, however, Lucido then sought and obtained leave to file an amended complaint. Count VI of the Amended Complaint now seeks monetary damages under the Federal Tort Claims Act.

The Government contends that Lucido cannot proceed with a claim under the Federal Tort Claims Act ("FTCA") because such a claim cannot be brought in federal court "unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail." 28 U.S.C. § 2675(a). The Government further states that "[t]his written request must be presented on 'an executed Standard Form 95 [SF-95] or other written notification of an incident accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death . . .' 28 C.F.R. § 14.2. Lucido did not present an SF-95 or other written request to DOJ or the FBI prior to the filing of this lawsuit that satisfy these requirements." (Gov't's Reply Br. at 4). It therefore contends that because Lucido "has not properly filed an administrative claim, dismissal pursuant to Rule 12(b)(1) is required. *See May v. Terry*, 861 F.2d 721, 1988 WL 113290 (6th Cir. 1988)(unpublished table opinion)("The timely filing of an administrative claim is a jurisdictional requirement for a FTCA case.'); *Blakely v. United States*, 276 F.3d 853, 865 (6th Cir. 2002)(explaining that requesting a sum certain is a necessary prerequisite to filing a FTCA claim); *Bradley v. United States*, 951 F.2d 268, 271 (10th Cir. 1991)(claim 'in excess of $100,000' is insufficient to meet sum certain requirement)." (Gov't's Reply Br. at 4). The Government reiterated this position in its supplemental brief filed following the filing of the Amended Complaint.

Because Lucido did not file a supplemental brief as ordered, he did not respond to this

14

ground for relief (i.e., that he has failed to exhaust administrative remedies) prior to the September 17, 2009 hearing.

At the September 17, 2009 hearing, Lucido's Counsel stated that Lucido was seeking injunctive relief, not monetary relief, with respect to his FTCA claim. He further stated that Lucido exhausted his administrative remedies by sending written communications regarding the relief he requests. Lucido's counsel admitted that Lucido did not previously make a claim for a sum certain.

At the September 17, 2009 hearing, the Court advised the parties that it intends to consider matters outside of the pleadings with respect to the issue of exhaustion of administrative remedies. To that end, the Court stated that it would allow Lucido the opportunity to present evidence establishing that he has, in fact, properly exhausted his administrative remedies. Counsel was directed to submit such evidence to the Court within seven days of the hearing. On September 23, 2009, Lucido's Counsel submitted an affidavit stating that he has contacted FINRA and the F.B.I., by letter and by telephone, requesting expungement of Lucido's records. (Docket Entry No. 49).

Having considered the parties arguments, and the evidence submitted by Lucido as to the exhaustion issue, the Court concludes that Lucido's claims asserted under the FTCA must be dismissed.

To the extent that Lucido requests injunctive relief with respect to his FTCA claim (i.e., expungement), that request fails as a matter of law because the only form of relief available under the FTCA is monetary damages. *See Estate of Trentadue ex rel. Aguilar v. U.S.,* 397 F.3d 840 (10th Cir. 2005) (district court lacks subject matter jurisdiction under the FTCA to provide

injunctive or declaratory relief); *Birnbaum v. U.S.*, 588 F.2d 319, 335 (2d Cir. 1998); 28 U.S.C. § 1346(b).

Before filing a FTCA claim in federal court to pursue monetary damages, an individual must first exhaust his or her administrative remedies. "Further, an administrative claim under the FTCA must be in careful compliance with its terms." *Blakely,* 276 F.865. In order for an administrative claim to be complete, it must include a "claim for damages in a sum certain." *Id*. Therefore, unless Lucido can establish that he previously exhausted his administrative remedies by filing a proper administrative complaint, which includes a claim for damages in a sum certain, he cannot proceed with this claim. Lucido has not submitted any evidence to establish that he has done so. To the contrary, at the September 17, 2009 hearing, Lucido's Counsel acknowledged that Lucido has not previously made a claim for damages in a sum certain.

Lucido's FTCA claims asserted against FINRA fare no better. As set forth in FINRA's supplemental brief, FINRA is not a "federal agency" as defined by the FTCA and thus he cannot pursue a claim against FINRA under that act. Moreover, assuming for the sake of argument that Lucido could assert a FTCA claim against FINRA, FINRA would also be entitled to dismissal of Count VI on the same basis as the Government (i.e., failure to exhaust, cannot obtain injunctive relief under FTCA).

> D. Lucido's Remaining Counts Seeking Declaratory And Injunctive Relief (Counts I and VII):

The Government also seeks dismissal of Lucido's counts seeking declaratory and injunctive relief (Counts I and VII). In doing so, it asserts:

> Lucido's request for declaratory and injunctive relief do not provide the basis for a claim, only relief that a court may grant in certain circumstances and do not

16

> provide an independent basis for subject matter jurisdiction. *See Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671-72 (1950); *Benson v. State Bd. of Parole and Probation*, 384 F.2d 238, 239 (9th Cir. 1967). Other than the claims addressed above, Lucido has pointed to no constitutional amendment, statute, or regulation that he alleges was violated.

(Gov't's Br. at 8).

Lucido did not respond to this ground for relief.

It is well established that the "Declaratory Judgment Act provides a particular form of relief. It does not confer jurisdiction which would not otherwise exist." 10 FED. PROC., L.Ed. § 23:39. In other words, the Declaratory Judgment Act does not provide an independent basis for jurisdiction. Rather, it provides courts with discretion to fashion a remedy in cases where federal jurisdiction already exists. *One Beacon Ins. Co. v. Chiusolo*, 295 Fed.Appx. 771, 775 (6th Cir. 2008). If Lucido's other claims are dismissed, the Count asserted under the Declaratory Judgment Act does not constitute an independent claim.

In addition, as the Court reads Count I of Lucido's Amended Complaint, it does not assert an actual claim against any Defendant. Rather, the Count appears to be a request for this Court to order the expungement of Lucido's criminal records based on its own alleged authority to do so. (*See* Amended Complaint at ¶ wherein Lucido alleges that "[t]his Court has the authority to expunge criminal records in appropriate cases.").

Lucido has not provided any authority to support his assertion that this Court has the authority to order expungement in either of the criminal cases, given that: 1) this Court did not preside over either of the two criminal actions; 2) Lucido requested expungement from the judges who did preside over those criminal actions and both judges denied the requests; and 3) those ruling are currently on appeal in the Sixth Circuit.

17

Moreover, even if this Court had the discretion to order expungement, this Court would not exercise such discretion here because the Court concurs with the rulings by Judge Edmunds and Judge Borman.

Accordingly, the Court shall dismiss Counts I and VII.

CONCLUSION & ORDER

For the reasons above, IT IS ORDERED that Defendants' Motions to Dismiss are GRANTED and Plaintiffs' claims in this action are DISMISSED.

IT IS SO ORDERED.


                                  S/Sean F. Cox  
                                  Sean F. Cox  
                                  United States District Judge

Dated:  September 29, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 29, 2009, by electronic and/or ordinary mail.

                                  S/Jennifer Hernandez  
                                  Case Manager